IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAMEIAN TOTTON, Y49642, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DEANNA BROOKHART, | ) | Case No. 23-cv-2353-DWD |
| MICHAEL DEIMEL, | ) | |
| STEPHAN GERMAK, | ) | |
| JULIA CAMMARILLO, | ) | |
| JASMINE ROBINSON, | ) | |
| WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Dameian Totton, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Lawrence Correctional Center (Lawrence). Upon initial review, the Court rejected Plaintiff's claims as insufficient for a variety of reasons. (Doc. 9). Plaintiff has now filed a timely amended complaint concerning similar issues. (Doc. 16).

Plaintiff's Amended Complaint (Doc. 16) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by

law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

On February 28, 2024, Plaintiff was escorted to segregation after he was accused of possessing dangerous contraband, among other things. (Doc. 16 at 8). He claims that at the time he was designated as "seriously mentally ill" (SMI), a designation which should have invoked various procedures. Specifically, he claims that per an Administrative Directive, Defendant Williams was responsible for notifying the mental health staff of his disciplinary issues so that they could prepare a form weighing in on the impact of his mental health on the disciplinary incident and the potential punishment. (Doc. 16 at 8-9). Williams neglected this duty, and he alleges that as a result he spent 70 days in segregation before his disciplinary ticket was overturned because the procedures for an SMI inmate were not followed. Plaintiff also faults Defendants Brookhart, Deimel and Germak for failing to realize when reviewing the outcome of his disciplinary proceedings that the proper procedures were not followed. (Doc. 16 at 9). Plaintiff alleges that the 70 days in segregation caused "atypical and significant hardships" that left him "emotionally and mentally distressed." (Doc. 16 at 9-10).

Plaintiff further claims that he notified Defendant Brookhart via two grievances that he had serious mental health needs, and that his mental health needs were not being met in the segregation setting. He claims his mental health deteriorated after repeated requests for mental health care were denied. Specifically, he alleges that he began to bang

his head on the wall, which caused swelling. (Doc. 1 at 11). He also experienced increased depression, slept for 12-14 hours per day, neglected basic self-hygiene, ate less, had bipolar episodes, and experienced suicidal ideation. He faults Brookhart for exhibiting deliberate indifference to his needs by not providing him mental health care in response to his grievances.

Additionally, Plaintiff explains that every Friday while he was in segregation, Defendants Camarillo and Robinson (behavioral health staff) conducted weekly mental health rounds. (Doc. 1 at 10). He claims he repeatedly told these two, "I'm not okay, I'm anxious mentally & emotionally distressed, losing my mind, I need help[.]" He also asked for one-on-one mental health attention and mental health group services, but the Defendants indicated there was nothing that they could do for him because the facility lacked a mental health professional. Plaintiff alleges that Camarillo and Robinson turned a blind eye to his situation and failed to intervene to provide needed services. (Doc. 16 at 10-11).

In support of the Amended Complaint, Plaintiff submitted disciplinary documents and a single grievance. (Doc. 16 at 15-23).

Based on the allegations in the Amended Complaint, the Court will designate the following claim:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Cammarillo and Robinson for refusing mental health services for 70 days while Plaintiff was in segregation.**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

The Court already extensively analyzed Plaintiff's Due Process claims upon review of his initial complaint and concluded that he failed to state a claim because the duration of his time in segregation was relatively short, he did not sufficiently describe atypical and significant hardships, and the prison's Administrative Directive about discipline for SMI inmates did not create a freestanding liberty interest. (Doc. 9). Although he has significantly reduced the allegations in his amended complaint about the disciplinary situation, he still named Defendants Williams, Germak, Deimel and Brookhart in relation to this issue and re-stated some of his allegations about the disciplinary situation. Factually, nothing has changed about the basis of these allegations, and the extensive analysis contained in the Court's earlier Order (Doc. 9) is still applicable. Plaintiff has failed to state a claim against Williams, Germak, Deimel, and Brookhart related to discipline.

Plaintiff also presents his allegations against Brookhart again concerning her alleged deliberated indifference to his grievances about his mental health. As with the disciplinary claim, the Court previously considered these allegations against Brookhart

in great detail and concluded that Plaintiff's assertions were insufficient to suggest Brookhart was on notice of a serious mental health issue and deliberately turned a blind eye to that issue. Plaintiff's allegations and evidence (a grievance) against Brookhart have not changed, so this claim is still insufficient.

Finally, in the Amended Complaint, Plaintiff has newly alleged that he told Defendants Robinson and Cammarillo on a weekly basis that he was in dire need of mental health care. He claims he requested one-on-one sessions and group therapy, but was told he would not receive those services due to a lack of staffing. He claims that his mental health significantly deteriorated during his time in segregation, which included self-harming behavior, bipolar episodes, and increased depression. At this preliminary juncture, these assertions are sufficient to proceed. However, the Court notes that generally, an inmate cannot recover compensatory damages under the PLRA solely for mental or emotional distress. Here, Plaintiff suggests that as a result of his mental distress he banged his head against the wall, which caused swelling. *See e.g., Rasho v. Elyea*, 856 F.3d 469, 477-78 (7th Cir. 2017) (finding that an inmate had alleged a sufficient physical injury for purposes of the PLRA by alleging he engaged in at least one incident of self-mutilation after being moved out of the behavioral health unit). He also discusses a variety of other impacts such as failing to keep up hygiene, refusing to eat, and sleeping significant portions of the day. For now, the Court will treat these impacts as sufficient to make out a claim which may warrant monetary damages.

### Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Amended Complaint (Doc. 1) survives against Defendants Julia Cammarillo and Jasmine Robinson.  By contrast, the Amended Complaint is insufficient to state a claim against Defendants Deanna Brookhart, Michael Deimel, Stephan Germak, and Williams, and the Clerk of Court is **DIRECTED** to **TERMINATE** these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendants Cammarillo and Robinson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 16), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical or mental health records.

**IT IS SO ORDERED.**

Dated: March 11, 2025                                    /s *David W. Dugan*
                                                        _____
                                                        DAVID W. DUGAN
                                                        United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.